### THOMPSON v. SOUTHERN BELL TEL. & TEL. CO.

Industrial Commission.

June 8, 1953.

58

Allen Clements, Miami, for claimant.

Walton, Hubbard, Schroeder, Lantaff & Atkins, for the employer.

SAMUEL C. HALPERT, Deputy Commissioner.

The claimant Minnie S. Thompson was employed as a janitress by the Southern Bell Tel. & Tel. Co., a self-insurer, for a period of approximately five years prior to December 23, 1952. On that date she sustained a fracture of the distal phalanx of her right ring finger and lacerations of the right little finger when during the course of her employment a door closed upon and jammed her right hand. After treatment and the placing of a splint on the fractured finger by the Walsh Clinic she returned to work. She worked the following day, December 24, was off on December 25, Christmas, and worked December 26. She has not worked since then. On December 24 the employer took her to the Walsh Clinic for the second and last time—thereafter she was treated by doctors of her own selection.

She made one visit to Dr. Taylor in Fort Lauderdale on December 29 at which time he put a splint on her finger, following which she

was treated by Dr. Miller in Hollywood, making four visits to his office, the last of which was on January 13, 1953, and at that time the last splint was applied to her fractured finger. This was her last medical treatment—she did not thereafter return to any doctor and she kept the splint on her finger until approximately April 15, 1953, when she removed it herself.

Dr. Francis W. Glenn testified that claimant has a permanent partial loss of the right ring finger and the little finger, 15% and 5% respectively. Dr. Leon Mims testified on behalf of the carrier that the permanent partial loss of use of the right ring finger was 10% and no resulting permanent disability to the little finger.

The employer contends that claimant is not entitled to compensation for permanent disability for the reason that the cause of the permanent stiffness in the finger was the abnormally long period a splint was applied, that had she returned after January 13 either to the Walsh Clinic or to the doctor of her own selection the splint would have been seasonably removed and stiffness would not have set in. The several doctors who testified, including claimant's witness, Dr. Glenn, were of the opinion that the splint ought not to have been kept on the fractured finger for more than ten days or two weeks, that if it had been removed within that period, no permanent disability would likely have resulted, and that the cause of the permanent disability was the uninterrupted encasement of the finger in a splint from December 23, 1952 to April 15, 1953, a period short of four months.

Generally, there is a distinction between negligence of the claimant which contributes to the primary injury and negligence which subsequently aggravates it. As regards the former the Act specifically provides that claimant's contributory negligence is not a bar to recovery. As to subsequent negligence which aggravates the original injury, however, it is generally held that the causal chain is broken by claimant's intervening negligence and recovery is barred. See Larson, section 13, chapter 111, "The Law of Workmen's Compensation" for general discussion and citations. Yet it would be quite unrealistic in the opinion of this deputy commissioner to hold that Minnie Thompson, claimant herein, ought to have known, as a reasonable janitress, that prolonged splinting would have a harmful rather than a beneficial effect on recovery. Hers was an ignorance of medical consequences equally shared in by this deputy commissioner prior to this hearing. It is my opinion that the post-accident behavior of the claimant does not relieve the employer of liability for her permanent disability.

Dr. Glenn testified that claimant reached maximum recovery about three months from the date of the accident. The employer

contends she is not entitled to compensation during this three month period for the reason that she had the capacity to work on a limited basis and was offered work on such limited basis by the employer. In support of the employer's contention Dr. James Fischer testified that an injury such as suffered by claimant is not generally totally disabling and that she could have continued working with restrictions on the use of the injured hand. Claimant's superiors testified that light work was offered on several occasions with instructions not to use the injured hand. Claimant, on the other hand, contends she was totally disabled during this three month period. I am of the opinion that the question whether a fractured finger such as sustained by claimant is totally disabling cannot receive a categorical answer. It may not be to a lawyer or bookkeeper—it may well be to a manual laborer or a surgeon.

Upon consideration of the evidence I therefore find—that at the time claimant was injured her average weekly wages were $39 making her rate of compensation $23.40 per week; that as a result of her injury claimant suffered temporary total disability for a period of six weeks from December 31, 1952 to February 10, 1953, inclusive; that claimant is not entitled to compensation from February 11, 1953 to the date of maximum recovery, March 23, 1953, for the reason that from and after the period of total disability she had the capacity to perform the limited janitress services required in the employment offered by the employer and which employment was available to her as late as April, 1953, having no justifiable cause to refuse such employment; that as a result of the injury claimant suffered permanent partial disability as follows—(a) 15% loss of use of her third right finger, (b) 5% loss of use of her right fourth finger; that claimant did not request the employer to furnish medical treatment as required by section 440.13(1), that Doctors Taylor and Miller did not file reports as provided by that section and that therefore the employer is not liable for the cost of said medical service rendered claimant; and that the sum of $100 is a reasonable fee for the legal services rendered claimant by her attorney in this proceeding.

It is therefore ordered that the employer, Southern Bell Tel. & Tel. Co., a self-insurer, forthwith pay—1. to the claimant the sum of $140.40, compensation for her temporary total disability from December 31, 1952 to February 10, 1953, inclusive, at the rate of $23.40 per week; 2. compensation to the claimant for 3¾ weeks at the rate of $23.40 per week for her permanent partial disability of 15% loss of use of her right third finger and 5% loss of use of her right fourth finger; 3. to Allen Clements the sum of $100 for legal services rendered claimant in this proceeding.